805 F.2d 1036
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Percy DAVIS, Defendant-Appellant.
 No. 85-3854.
 United States Court of Appeals, Sixth Circuit.
 Oct. 16, 1986.
 
 Before MARTIN, GUY and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Percy Davis appeals a jury verdict on two of three counts alleging violation of 18 U.S.C. Sec. 2252(A)(1), mailing a visual depiction of a minor engaged in sexually explicit conduct. After conviction, the district judge suspended the sentence, imposing five years probation and fining Davis $1250 on each of the two counts. Davis argues first that based on his defense of entrapment there was insufficient evidence to support the jury verdict. Second, he argues that prosecutorial misconduct in closing argument denied him his right to a fair trial.
 
 
 2
 We find first that the allegation of prosecutorial misconduct is without merit. Though Davis argues that the Assistant United States Attorney overstepped the bounds of proper legal argument by appealing to the fears and emotions of the jury, the trial transcript fails to support this argument. In his brief Davis alleges the prosecutor used inflammatory language inferring that he was a child abuser or child molester whom the community must stop. While not the most articulate argument, the transcript does not support this allegation.
 
 
 3
 On the question of entrapment, the issues become more complex. The facts of the case are as follows. United States Postal Inspector Paul Hartman was assigned to investigate the use of the U.S. mails to promote child pornography. On September 4, 1984, the United States Customs Service seized certain materials intended for delivery to Davis and notified Hartman, providing him with Davis' address. Davis acknowledges having ordered an illustrated magazine containing sexually explicit material, but denies having ordered any item whose subject was child pornography. Though the Customs Service apparently classified an illustrated advertisement addressed to Davis as child pornography, the material was reportedly destroyed and its contents were never proven.
 
 
 4
 On October 4, 1984, Hartman mailed Davis a form letter on the letterhead of "Research Facts Company" stating that it was "a small old-established firm in Cleveland Ohio," and that for many years it had conducted consumer surveys on a variety of subjects. He told Davis that his name was given to the company by a friend who felt he might be interested. The letter then asked, "Are you interested in sharing with others of similar interests your experiences with the youth of the community? Would you like to establish a meaningful relationship with others who believe the attitude of the community should be changed to a more liberal one? If you believe in the joy of sex and the complete awareness of those lusty and youthful lads and lasses of the neophite age, we would like to hear from you. If you are not interested in any of the sexually-fulfilling situations mentioned, throw this letter away. But if you are one of the select few who believe in their rights to practice their own beliefs, please write to us ..."
 
 
 5
 Davis responded to this letter, stating "I am interested in sexual fulfillment that all people should share with the youth of the community. I believe that the community should be changed to a more liberal one. I would love to practice my own beliefs." Mr. Davis testified that he did not think this inquiry had anything to do with child pornography but rather that youth should be better informed about sex.
 
 
 6
 Hartman next sent Davis a five-page questionnaire on the same letterhead which purported to be a public opinion survey regarding sexual attitudes in the community. Davis answered the survey and his answers would indicate that "pre-teen sex" was not among the things which interested him. Hartman mailed a third letter dated November 19, 1984 using the letterhead of the Ohio Valley Action League, and calling himself R. Van Camp. In this letter he sent Davis several names of people with similar interests and urged him to contact them. Davis did not respond to this letter but later mentioned that he had lost the list. Hartman next assumed the name of Ted Ricci and wrote to Davis telling him he had "unique collectables" and asking him to respond if he was interested in the "younger, more beautiful things in life." Davis responded that he liked young, beautiful things in life, but that he did not have any "collectables". After receiving this response "Ted Ricci" sent Davis a photocopy of a nude girl, approximately seven or eight years old lying on a bed. This photo was not sexually explicit and Hartman reportedly received prior approval from his superiors to send it. This photo was accompanied by a letter which stated that "I'm glad to hear that you also have some interests in some younger collectables. I am enclosing a small sample of my interests and wish you do the same." Davis then sent Ricci a letter saying it had been a long time since he had seen such a photo or had such an experience. He enclosed a sexually explicit photocopy of a young girl, estimated to be fourteen or fifteen years old. The photo from which this copy was made had been in Davis' possession for at least ten years. This act constituted count I of the indictment (of which Davis was acquitted). "Ricci" then sent Davis more photographs, and Davis responded that he didn't have many samples because he had not pursued an interest in "young stuff." He did send Ricci another old photograph through the mail, (accomplishing the act in Count 2), and the acts in Count 3 were done in response to Ricci's request for clearer photocopies of the ones he had already received.
 
 
 7
 The activities involved in Counts 1, 2, and 3 led to the eventual search of Davis' house during which Hartman uncovered the original photographs which were sent to Ricci, along with some others, a magazine and some audiotapes which allegedly involved child pornography.
 
 
 8
 At trial Davis admitted the elements of the offense with respect to each count of the indictment. He then introduced evidence that he was the victim of entrapment, and contends on appeal that the evidence established entrapment as a matter of law. Entrapment occurs when the criminal conduct originates in the minds of the government officials and is implanted by them in the mind of an otherwise innocent person. Sherman v. United States, 356 U.S. 369, 372 (1958). "If the facts and circumstances of the case show conclusively that entrapment occurred, the trial judge has a duty to find that entrapment, as a matter of law, exists in the case." Martinez v. United States, 373 F.2d 810, 812 (10th Cir.1967). However, if the evidence on entrapment is conflicting, the issue should be submitted to the jury. Martinez at 812.
 
 
 9
 The central question in a finding of entrapment is whether an individual is predisposed to commit an offense. Some courts have evaluated the issue of predisposition by considering certain factors including the character and reputation of the defendant; who made the suggestion of criminal activity; whether the defendant was engaged in criminal activity for profit; whether the defendant evidenced reluctance to commit the offense, overcome by Government persuasion; and, the nature of the inducement offered by the government. United States v. Thomas, 726 F.2d 1191, 1197 (7th Cir.1984), cert denied, 104 S.Ct. 2683 (1984) (citing United States v. Kaminski, 703 F.2d at 1007 (7th Cir.1983)). When these factors are applied to the case of Davis, there appears to be evidence of predisposition which would preclude a finding of entrapment as a matter of law. On one hand Davis was a police officer, the government official made the suggestion of the criminal activity, and there was no evidence to indicate that Davis engaged in this activity for profit. However, he demonstrated no reluctance in committing the offense, and did so with minimal inducement, the promise of further "collectables" to be sent by "Mr. Ricci". Predisposition was described by the district court judge in this case as being "ready and willing whenever the opportunity was afforded", and it appears that Davis was both ready and willing. Though there is no evidence to show that Davis was engaged in the activity charged before his being solicited by Hartman, the facts indicate that if afforded such an opportunity by an actual trafficker in child pornography Davis would likely have responded in the same fashion. The facts therefore do not support a finding of entrapment as a matter of law.
 
 
 10
 The judgment of the district court is affirmed.